**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8591-GW(AGRx) | | Date | July 14, 2017 |
|---|---|---|---|---|
| Title | *Lary Kennedy, et al. v. Chris Ferguson, et al.* | | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **IN CHAMBERS - FINAL RULING RE:**

**DEFENDANT PHIL IVEY'S MOTION TO DISMISS [182];**

**DEFENDANTS IAN J. IMRICH AND LAW OFFICES OF IAN J. IMRICH, APCS' MOTION TO DISMISS THIRD AMENDED COMPLAINT [184];**

**DEFENDANT COZEN O'CONNOR'S MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) [185];**

**ANDREW BLOCH'S MOTION TO DISMISS THIRD AMENDED COMPLAINT [187];**

**DEFENDANT ERIK SEIDEL'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2) [188];**

**DEFENDANT HOWARD LEDERER'S MOTION TO DISMISS THIRD AMENDED COMPLAINT [189];**

**DEFENDANT CHRIS FERGUSON'S MOTION TO DISMISS ACTION ON THE GROUNDS OF: (1) RES JUDICATA; (2) COLORADO RIVER ABSTENTION (3) MOOTNESS (4) FAILURE TO PROPERLY ALLEGE CAFA JURISDICTION [190];**

**DEFENDANT TILTWARE, LLC'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT [191]**

As per its final ruling on the Defendants' Motions to Dismiss attached hereto, the Court dismisses Plaintiffs' RICO cause of action with prejudice. As to the remaining state causes of action, the Court declines to exercise supplemental jurisdiction and therefore dismisses them without prejudice.

:

Initials of Preparer   JG

*<u>Lary Kennedy, et al. v. Chris Ferguson, et al.</u>*, Case No. 2:11-cv-08591-GW-(AGRx)
Final Rulings on Defendants' Motions to Dismiss the Third Amended Complaint

## I. Background

On October 17, 2011, Plaintiffs Lary Kennedy ("Kennedy") and Greg Omotoy ("Omotoy") commenced this purported class action, alleging one federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and numerous state law claims.[1] *See generally* Complaint, Docket No. 1. On November 18, 2011, Plaintiffs amended their complaint. *See generally* First Amended Complaint ("FAC"), Docket No. 5. On August 24, 2012, the Court stayed the action while a parallel action in New York was being litigated.[2] *See* Docket No. 64. On May 26, 2016, the Court lifted the stay "to allow the defendants to file 12(b) motions." Docket No. 85.

---

[1] On October 1, 2009, Plaintiffs had filed an earlier similar class action in the Los Angeles County Superior Court which was removed to federal court that same month. *See Kennedy v. Full Tilt Poker*, Case No. CV-09-7964 ("*Full Tilt Poker*"), Docket No. 1. On April 26, 2010, Judge Margaret Morrow dismissed Plaintiffs' RICO claim finding that they had failed to "comply with [Fed. R. Civ. P.] Rule 9(b), adequately allege the predicate acts on which the claim is based, adequately plead the existence of an enterprise, and adequately allege causation. *Id.*, Docket No. 60. On October 12, 2010, the court again dismissed the Plaintiffs' RICO claim without prejudice, declined to exercise supplemental jurisdiction over the remaining non-federal causes of action, and remanded the case back to state court. *Id.,* Docket No. 97. On July 2, 2012, Plaintiffs moved to reopen the *Full Tilt Poker* lawsuit. *Id.,* Docket No. 100. On August 24, 2012, the court denied Plaintiffs' request to vacate its prior dismissal order or to reopen that lawsuit. *Id.,* Docket No. 111.

[2] As noted in *Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 481 (S.D.N.Y. 2013):

> On April 15, 2011, known as "Black Friday" in the online gambling world, the United States Attorney for the Southern District of New York shut down the websites of the three largest online poker companies operating in the United States, including Full Tilt, seized their assets, and issued arrest warrants for their founders . . . . An ensuing criminal indictment accused various defendants of multiple [Unlawful Internet Gambling Enforcement Act ("UIGEA"), 31 U.S.C. §§ 5361-5367] violations, conspiracy to commit bank and wire fraud, and conspiracy to commit money laundering. *See United States v. Scheinberg*, S3 No. 10 Cr. 336 (S.D.N.Y. Apr. 14, 2011) . . . . Soon after the indictment, the Department of Justice . . . filed a civil suit seeking in rem forfeiture of defendants' assets and any proceeds derived from their illegal acts. *See United States v. Poker stars*, No. 11 Civ. 2564 (S.D.N.Y. Sept. 21, 2011) . . . . The suit also sought monetary judgments from each of the Individual Defendants.

The *Lawson* lawsuit was: (1) filed around August 2011 against several defendants including Full Tilt Poker, Ltd., its California-based parent company (*i.e.* Tiltware, LLC) and four of its founders and part owners (*i.e.* Raymond Bitar, Howard Lederer, Christopher Ferguson, and Rafael Furst); (2) brought as a nationwide class action consisting of persons who had "real money" in Full Tilt Poker player accounts; and (3) raised causes of action for *inter alia* (a) conversion stemming from the freezing of Full Tilt player accounts and (b) RICO violations based in part on wire fraud as to the security of player accounts. *Id.* at 480-82. The court in *Lawson* held that the plaintiff had sufficiently alleged a cause of action for conversion, but that she lacked standing to assert her RICO claim because she had not shown that the alleged racketeering activities were the proximate cause of her injuries. *Id.* at 487-89. It held that plaintiff's injury (*i.e.* her inability to access the funds in her Full Tilt account) was not the result of the racketeering activities themselves but due to their coming to public light which in turn lead to Full Tilt's freezing of the player accounts. *Id.* at 488-89. The court also rejected the argument that, "as a result of the racketeering activities, player funds were doomed *prior* to the Government's actions." *Id.* at 489.

1

After defendants named in the FAC moved to dismiss the action, *see* Docket Nos. 92-104, the Court granted without prejudice the motions to dismiss brought by all but one defendant, *see* Order, Docket No. 133.[3]  The Court reasoned that Plaintiffs failed to satisfy the Federal Rule of Civil Procedure ("Rule") 9(b) particularity requirement in delineating the predicate acts of wire or mail fraud underlying their RICO claim, and that Plaintiffs did not adequately allege how the claimed misrepresentations or non-disclosures proximately caused Plaintiffs' injuries.  *See id.* at 8-11.

On November 30, 2016, Plaintiffs amended their FAC and asserted claims against, *inter alia*, Defendants: (1) Chris Ferguson ("Ferguson"); (2) Howard Lederer ("Lederer"); (3) Andy Bloch ("Bloch"); (4) Phil Ivey ("Ivey"); (5) Ian J. Imrich ("Imrich"); (6) Erik Seidel ("Seidel") (collectively, with Ferguson, Lederer, Bloch, Ivey, and Imrich, "the Individual Defendants"); (7) Tiltware, LLC ("Tiltware"), a California limited liability company; (8) Cozen O'Connor ("Cozen"), a California limited liability partnership; and (9) Law Offices of Ian J. Imrich, APC ("LOI").  *See generally* Second Amended Complaint ("SAC"); Docket No. 138.  Defendants filed (or joined in) motions to dismiss the SAC on numerous grounds.  *See* Docket Nos. 140-49; *see also* Docket Nos. 173-74.

On March 29, 2017, the Court granted Defendants' motions to dismiss without prejudice, finding that the SAC failed to allege a cognizable claim for relief because the allegations underlying claims of wire or mail fraud – the predicate acts for Plaintiffs' RICO claim – remained "virtually unchanged" and therefore again failed to satisfy Rule 9(b)'s particularity requirement.  *See* Tentative Ruling ("T.R."), Docket No. 175; *accord* Docket No. 180.  However, the Court afforded Plaintiffs "one last opportunity to amend their complaint to allege a cognizable federal claim for relief" pursuant to Rule 15(a)(2).  *See* Docket No. 180.

Plaintiffs filed their Third Amended Complaint on May 11, 2017.  *See generally* Third Amended Complaint ("TAC"), Docket No. 181.  Plaintiffs continue to allege the following claims: (1) money had and received; (2) unjust enrichment; (3) violation of the California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (4) fraud; (5) violation of the California Business and Professions Code ("CBPC"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (6) violation of RICO.  *See generally id.*  Defendants – Ivey, Imrich, LOI, Cozen, Bloch, Seidel, Lederer, Ferguson, and Tiltware – subsequently filed (or joined in) motions to dismiss the TAC on numerous grounds (collectively, the "Motions"), which currently remain pending before the Court.[4]  *See* Docket Nos. 182, 184-85, 187-91; *see also* Docket Nos. 186, 192, 217.

---

[3] The Court also granted with prejudice a motion to dismiss brought by John Juanda, who is not the subject of the instant motions.  *See* Docket No. 133.

[4] With the exception of Group Bernard Tapie, the Court has already terminated all other defendants in this action.  *See* Docket No. 60 (dismissing defendants Allen Cunningham, Filco Ltd., Perry Friedman, Rafe Furst, Phillip Gordon, Gus Hansen, Kolyma Corporation A V V, Erik Lindgren, Mail Media Ltd., Michael Matusow, Orinic Ltd., Oxalic Ltd., Pocket Kings Consulting Ltd., Pocket Kings Ltd., Ranston Ltd., Bernard Tapie, Vantage Ltd., Patrik Antonius and Raymond Bitar); Docket No. 133 (dismissing John Juanda).  Plaintiffs concede that Group Bernard Tapie has "no real identity separate from" Bernard Tapie.  *See* TAC ¶ 26.  In any event, Plaintiffs link no predicate act underlying their RICO claim to Group Bernard Tapie.  Plaintiffs also do not directly and proximately link any conduct by Group Bernard Tapie to their harm.

## II. Plaintiffs' Failure to Timely Oppose the Motions

As a preliminary matter, Plaintiffs failed to timely oppose the Motions. This alone permits the Court to grant the Motions. *See* C.D. Cal. L.R. 7-9 ("Each opposing party shall, not later than ten (10) days after service of the motion in the instance of a new trial motion and *not later than twenty-one (21) days before the date designated for the hearing of the motion* in all other instances, serve upon all other parties and file with the Clerk . . . the evidence upon which the opposing party will rely in opposition to the motion and a brief but complete memorandum which shall contain a statement of all the reasons in opposition thereto and the points and authorities upon which the opposing party will rely") (emphasis added); C.D. Cal. L.R. 7-12; *see also* C.D. Cal. L.R. 83-7.

Plaintiffs filed their Oppositions on June 29, 2017 – well beyond the June 15, 2017 deadline imposed by the local rules to oppose the Motions. *See* Docket Nos. 205-10; *accord* C.D. Cal. L. R. 7-9. Rule 7-12 states that "[t]he failure to file any required document, or *the failure to file it within the deadline*, may be deemed consent to the granting or denial of the motion[.]" *See* C.D. Cal. L.R. 7-12 (emphasis added). As such, the Court deems Plaintiffs' failure to timely file the oppositions as consent to granting the Motions. On this basis alone, the Court would grant the Motions. *See Holguin v. Residential Credit Servs., Inc.*, No. CV 16-015110-AB (AGRx), 2016 WL 7486280 at *2-*3 (C.D. Cal. May 24, 2016) (granting 12(b)(6) motion to dismiss based on plaintiff's failure to timely oppose motion); *see also Izenberg v. ETS Servs.*, 589 F. Supp. 2d 1193, 1197-98 (C.D. Cal. 2008) (noting plaintiff's failure to timely file opposition under L.R. 7-12 entailed consent to grant motion to dismiss civil RICO cause of action); *cf. Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (confirming that a court may dismiss an action based on a party's failure to comply with the court's Local Rules).

As such, the Court has no need to address the parties' arguments regarding Plaintiffs' failure to state a claim upon which relief can be granted. Nevertheless, the Court will do so.

## III. Defendants' Motions to Dismiss for Failure to State a Claim[5]

The Court accurately set forth both the applicable legal standard for Rule 12(b)(6) dismissal and the required elements of a civil RICO cause of action in a prior T.R. *See* Docket No. 133 at 6-7. Plaintiffs' RICO claim serves as the sole basis for federal subject matter jurisdiction herein. *See generally* TAC. However, the TAC still fails to meet the Rule 9(b) requirements in regards to the wire and mail fraud predicate acts. Further, although the TAC sufficiently raises a new RICO predicate act on the basis of an alleged illegal gambling business, Plaintiffs fail entirely to allege how any Defendant's conduct in relation to said business proximately caused Plaintiffs' injuries. Thus, Plaintiffs have failed to remedy their deficient RICO cause of action.

### A. Wire and Mail Fraud

The Court articulated the particularity pleading standard that governs fraud allegations in its prior ruling. *See* T.R. at 7-8 ("Rule 9(b) provides that '[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud,' while '[m]alice, intent, knowledge,

---

[5] Individual Defendants have also asserted in their motions to dismiss, among other things, that this Court does not have personal jurisdiction over them, but the Court remains unpersuaded by the arguments presented. So too for their res judicata, abstention, and mootness arguments. Because the Court dismisses this action based on Defendants' Rule 12(b)(6) motions with prejudice, the Court however need not rule on those arguments.

and other conditions of a person's mind may be averred generally.'") (citing Fed. R. Civ. P. 9(b)). In the TAC, Plaintiffs maintain allegations regarding a "pattern of racketeering activity" under 18 U.S.C. § 1961(5), pursuant to 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).[6] *See* TAC ¶¶ 95-96, 98. Review of Plaintiffs' wire and mail fraud allegations uncovers, however, that they remain virtually unchanged in their lack of particularity when compared to the SAC. *Compare* SAC ¶¶ 70, 73-74, 87, *with* TAC ¶¶ 1-54, 65-67, 70-78, 85-88. Notably, Plaintiffs' 'new' claims regarding the "Full Tilt Poker Principles" ("the Principles") essentially reorganize allegations that this Court deemed deficient in the SAC. *See* Docket No. 133 at 9-10; *see also* Docket No. 175 at 2-3. *Compare* SAC ¶ 73, *with* TAC ¶¶ 36-38.

Moreover, Plaintiffs fail to identify which Individual Defendants directed the allegedly fraudulent conduct, omit any specific facts linking any Individual Defendants to the supposed predicate acts, and neglect to mention the dates and locations of conduct underlying the alleged violations. *See generally* TAC 1-54, 65-67, 70-78, 85-88. Despite asserting that certain Individual Defendants posted the Principles on their personal websites, Plaintiffs fail to aver a direct relationship between the allegedly fraudulent representations and their alleged injuries. *See* TAC ¶¶ 37-38. *See generally Resolution Trust Co. v. Keating*, 186 F.3d 1110, 1117 (9th Cir. 1999) ("The causation element requires a showing that the conduct constituting the violation both *directly and proximately* caused the alleged injury.") (citing *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992) (emphasis added)). In fact, Plaintiffs claim to have "read [the Principles] on the fulltiltpoker.com website," thereby undermining a direct relationship between Individual Defendants' posts on their personal websites and Plaintiffs' alleged injuries.

As previously elucidated by this Court, pursuant to Rule 9(b), Plaintiffs fail to plead predicate acts of wire and mail fraud with sufficient particularity. *Compare* Docket No. 175 at 2-3, *with* TAC ¶ 94. Plaintiffs' TAC fails to satisfy the particularity pleading standard required to allege wire and mail fraud as RICO predicate acts.

B. <u>Illegal Gambling Business</u>

In the TAC, Plaintiffs also allege – for the first time – that illegal gambling transactions constitute RICO predicate acts under 18 U.S.C. section 1955. *See* TAC ¶ 98; *accord* 18 U.S.C. § 1961(1) (including 18 U.S.C. § 1955 violations among predicate acts to "racketeering activity" under RICO).

"The plaintiff must adequately plead the elements of each predicate act, satisfying the pleading standard that would apply if the predicate act were a stand-alone claim." *Nutrition Distrib. LLC v. Custom Nutraceuticals LLC*, 194 F. Supp. 3d 952, 957 (D. Ariz. 2016) (citing *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (finding complaint failed to state RICO claim where plaintiff failed to adequately plead elements of predicate acts of mail and wire fraud, which required particularity pleading)). In contrast to allegations of wire

---

[6] The Court notes, however, that Plaintiffs' allegations regarding predicate acts incorporate the type of "lengthy description[s] of many different asserted acts of wrongdoing by various Defendants," previously considered and rejected by various courts in this Circuit. *See, e.g.*, *Graf v. Peoples*, No. CV 07-4731-VAP (E), 2008 WL 4189657 at *6 (C.D. Cal. Sept. 4, 2008); *accord Savage v. Council on American-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281 (N.D. Cal. Jul. 25, 2008) (RICO claim insufficient, where plaintiff set forth "redundant narrative of allegations and conclusions of law, but [made] no attempt to allege what facts [were] material to his claims under the RICO statute, or what facts [were] used to support what claims under particular subsections of RICO") (citing *Pelletier v. Sweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991).

and mail fraud, which require particularity pleading under Rule 9(b), Plaintiffs' TAC alleges an additional predicate act under section 1955, which requires allegation of facts sufficient to constitute Defendants' indictment for operation of an illegal gambling business. Under section 1955, "illegal gambling business" means a gambling business that: (1) violates the law of a state or political subdivision in which it is conducted; (2) involves five or more persons in its operation; and (3) has been or remains in substantially continuous operation in excess of thirty days or grossed revenue of over $2,000 in any single day. 18 U.S.C. § 1955(b).

Plaintiffs now explicitly allege that "[e]ach gambling transaction in which real money was employed was part of the conduct of an illegal gambling business in violation of 18 U.S.C. § 1955." TAC ¶ 98. Yet Plaintiffs' allegations regarding the nature of said illegal gambling business are replete with mere legal conclusions. *See, e.g., id.* ¶ 97 ("Full Tilt has conducted at least one Internet gambling transaction in violation of the law of Illinois . . . and Utah each year since October 1, 2005 and onward. Each gambling transaction . . . was part of . . . an illegal gambling business conducted in violation of state law . . . ."). Plaintiffs further assert, in conclusory fashion, that wagering transactions conducted against players in California (presumably including Plaintiffs) on the Full Tilt Poker website by "any Full Tilt Owner Defendant . . . constituted a violation of California Penal Code § 330." *See id.* ¶ 97.[7] Plaintiffs claim "many thousands of [section 330] violations by the Fulltiltpoker.com Group" occurred annually since October 1, 2005, which were "conducted in violation of state law, by an association-in-fact that employed hundreds of peoplen [*sic*] and operated continuously from October 1, 2005 to April 15, 2011." *Id.*

However, the TAC also includes specific factual claims regarding the operation of an alleged illegal gambling business. The TAC claims that "the owners and operators of the www.fulltiltpoker.com website . . . regularly played on the website," with respect to "real money" wagering transactions. *Id.* ¶ 31. Plaintiffs claim that Defendants "utilize[d] the funds of the Fulltiltpoker.com Group as their stakes in the game," played using "multiple screen names," and "created poker robots to play" for Defendants on the Full Tilt Poker websites. *See id.* ¶¶ 31-32. This, according to Plaintiffs, ostensibly created a "house" to play against, rendering real money wagering transactions on the fulltiltpoker.com website illegal under California and other state laws. *See id.* ¶¶ 30-31.

The TAC further raises factual claims regarding the number of individuals involved in the business and the "substantially continuous operation" of the business in excess of thirty days, the other two required elements of a predicate act under 18 U.S.C. section 1955. For example,

---

[7] The cited statute provides: "[e]very person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noire, rondo, tan, fan-tan, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of those prohibited games, is *guilty of a misdemeanor*, and shall be punishable by a fine not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months, or by both the fine and imprisonment." Cal. Penal Code § 330 (emphasis added). Section 1955, however, does not delineate between felony and misdemeanor state law violations. *See* 28 U.S.C. § 1955(b). Persuasive treatment of the issue strongly suggests that the federal statute prohibiting illegal gambling business applies to defendants that violate state laws – notwithstanding the fact that defendants' violations of state law, considered individually, amount to technical or minor misdemeanor violations. *See, e.g.*, *United States v. Useni*, 516 F.3d 634, 657 (7th Cir. 2008) ("Nothing in the text of [section] 1955 prevents its application to misdemeanor violations of state gambling law.").

the TAC states that "[e]ach entity of the Fulltiltpoker.com Group employed and continues to employ at least five people . . . and such entity continuously conducted . . . all or part of the business conducted by the Full Tilt association-in-fact from as early as October 1, 2008, until June 29, 2011 . . . ." *Id.* ¶ 35. Further, Plaintiffs allege that "such business was in continuous operation from at least October 1, 2005, until June 29, 2011." *Id.*

At this stage, the Court must construe the TAC in the light most favorable to Plaintiffs, accepting all allegations of material fact as true and drawing all reasonable inferences from well-pleaded factual allegations, although the Court need not accept as true legal conclusions couched as factual allegations. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Construing the complaint in the light most favorable to Plaintiffs, the TAC alleges facts sufficient to establish a RICO predicate act based on operation of an illegal gambling business, pursuant to 18 U.S.C. § 1955.

Despite setting forth sufficient factual allegations regarding the existence of an illegal gambling business, the TAC founders on proximate causation. Plaintiffs still fail to assert how any Defendant's conduct with respect to the operation of an illegal gambling business directly and proximately caused Plaintiffs' injuries.[8] *See* 18 U.S.C. § 1964(c) (conferring standing to sue to "[a]ny person injured in his business or property by reason of a violation of section 1962"); *see also Resolution Trust Co. v. Keating*, 186 F.3d 1110, 1117 (9th Cir. 1999) ("The causation element requires a showing that the conduct constituting the violation both *directly and proximately* caused the alleged injury.") (citing *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992) (concluding that, in order to demonstrate that the plaintiff's injury occurs "by reason of" a RICO violation, the plaintiff must show not only that the defendant's violation was a "but for" cause of the alleged injury, but also the proximate cause) (emphasis added)). Simply alleging the existence of an illegal gambling operation is alone insufficient to establish a RICO cause of action. *See* Docket No. 167-2 at 30-31 n.7 ("[M]ere existence of an illegal gambling operation is not sufficient to establish a RICO violation without the requisite proximate cause.").

Simply, a direct relationship must exist between the injury asserted and the injurious conduct alleged. *Holmes*, 503 U.S. at 268-69 (noting that "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors") (citation omitted); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1147-48 (9th Cir. 2008). Here, because Plaintiffs do not reference specific Defendants in relation to their injuries, the critical link between particular Defendants' alleged RICO violations and Plaintiffs' financial injuries remains "too remote, purely contingent, or indirect." *Holmes*, 503 U.S. at 268-69 (citation omitted). Tellingly, Plaintiffs expressly allege that "Pocket Kings" – a defendant previously dismissed in this action – and *not* Defendants moving to dismiss this action "confiscated [Plaintiffs' accounts] on or about January 7, 2008[.]" *See* TAC ¶ 53. With respect to rake collection, Plaintiffs similarly fail

---

[8] Plaintiffs allege that they deposited funds on fulltiltpoker.com in late 2007, "relying on the assurance of the Full Tilt Principles in deciding to deposit such funds." TAC ¶ 56. Plaintiffs further claim that "Pocket Kings confiscated these funds on or about January 7, 2008, at which point the [Plaintiffs'] accounts . . . were closed, and the funds therein . . . distributed to the Full Tilt Owner Defendants." *Id.* In addition, the TAC states that "Defendants removed from Omotoy's account money as rake and tournament fees while he played the game, and removed from Kennedy's account money in rake during the time she played . . . after October 1, 2005." *Id.* ¶ 53.

to reference any particular Defendant, generally averring only that all "Full Tilt Owner Defendants" caused that injury. *See id.* ¶ 52-53.

Plaintiffs' broad assertion that "[e]ach gambling transaction in which real money was employed was part of the conduct of an illegal gambling business in violation of 18 U.S.C. § 1955" neglects to allege specific facts linking named Defendants to Plaintiffs' financial injuries. *See* TAC ¶ 98. Nor do Plaintiffs incorporate by reference allegations linking the specific conduct of any Individual Defendants to any claimed financial injury. *See id.* Therefore, Plaintiffs "stand at too remote a distance to recover" under their civil RICO cause of action. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries.") (emphasis added). Despite their new, broad allegation regarding Defendants' "illegal gambling business," Plaintiffs do not allege to have engaged in any "gambling transaction" against any Defendant in this action; nor do Plaintiffs identify any injury directly stemming from any such "gambling transaction." *See* TAC ¶ 98. The Court concludes that Plaintiffs' alleged predicate acts stemming from the operation of an illegal gambling business remain far too attenuated to satisfy the proximate causation standard that governs civil RICO claims.[9]

## IV. Conclusion

Based on the foregoing and the prior rulings dismissing the earlier versions of Plaintiffs' complaints (*see* Docket Nos. 133, 175), the Court would grant dismissal with prejudice with respect to the Plaintiffs' civil RICO claim. Because that claim provided the sole basis for this Court's subject matter jurisdiction in this case, and related state law claims substantially predominate this action, the Court would decline to exercise supplemental jurisdiction over those remaining claims and dismisses them without prejudice. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state-law] claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.") (citing *Gibbs*, 383 U.S. at 726); *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) (holding that "where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice").

## V. Addendum

Following the oral arguments of the parties on July 6, 2017, the Court supplements its

---

[9] Moreover, the Court notes that Plaintiffs should already have surmised this fact, based on prior orders involving substantially similar claims. *See e.g. Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 488-89 (S.D.N.Y. 2013); *Segal v. Bitar*, No. 11 Civ. 4521 (LBS), 2012 WL 273609 at *6-*8, *10-*13 (S.D.N.Y. Jan. 30, 2012); *Kennedy v. Full Tilt Poker*, No. CV-09-07964 MMM (AGRx), 2010 WL 1710006 at *4, *8 (C.D. Cal. Apr. 26, 2010).

7

ruling on the Motions as follows. In the end, the Court still finds the TAC deficient for the reasons stated in its July 6th Tentative Ruling and in its earlier decisions. Specifically, the Court is unpersuaded that moving Defendants directly and proximately caused Plaintiffs' injuries through "rake" collection underlying the allegedly illegal gambling business, based on factual allegations in the Third Amended Complaint. The injuries directly and proximately linked to any "illegal gambling business" were criminally prosecuted, successfully so, and were the subject of civil forfeiture action in alternative forums – and even there the civil RICO claims were dismissed for lack of direct and proximate causation. *See, e.g.*, *Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 481 (S.D.N.Y. 2013); *see* Consent, Preliminary Order of Forfeiture, *U.S.C. v. Bitar*, Case No. S1-12-Cr.-529 (S.D.N.Y.) attached as Exhibit to Tiltware, LLC's Reply, Docket No. 219. Additionally, the Court remains unpersuaded by Plaintiffs' arguments regarding untimely filing of the Oppositions on June 29, 2017 – well beyond the June 15, 2017 filing deadline. The Court, therefore, adopts the Tentative Ruling on the Motions as its final ruling.